

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR–15–926

| | |
|---|---|
| ANTHONY L. BRAGG | **Opinion Delivered:** September 7, 2016 |
| APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CR-15-43] |
| V. | |
| STATE OF ARKANSAS | HONORABLE JOHN R. PUTMAN, JUDGE |
| APPELLEE | AFFIRMED |

**BART F. VIRDEN, Judge**

Appellant Anthony Bragg entered a conditional guilty plea to several felony drug offenses and a firearms offense in the Boone County Circuit Court. On appeal, Bragg argues that the trial court erred in denying his motion to suppress evidence on the basis that the affiant included false statements in the affidavit for a search warrant. We find no error and affirm.

## I. *Background*

On January 23, 2015, Robert Williams gave the Boone County Sheriff's Office a handwritten statement that

> I had my maintenance man called to come fix my fan that broke[.] [H]e came into my house an[d] proceed[ed] to fix the fan but he didn't have the right piece[.] [B]efore he left he pulled a black pouch out of his front shirt pocket[,] opened it up[, and] pulled [out] a big bag of what I believe was meth an[d] asked me an[d] my [fiancée] [if] we wanted some[.] I told him he needed to leave an[d] when I said that he pulled a gun an[d] said ["]I guess this don't need to be talked about again["] an[d] then he left so I got me[,] my [fiancée, and] our 10 month old an[d] left to come to

SLIP OPINION

the police because we are scared for our lives[.]

In an affidavit to establish probable cause and grounds for issuance of a search warrant, Coordinator Robert Braden with the Fourteenth Judicial District Drug Task Force provided the following facts:

> That on Friday January 23rd, 2015, Robert Williams, resident at [redacted] in Omaha Arkansas otherwise known as State Line RV Park, went to the Boone County Sheriff's Office and reported an incident involving Anthony Bragg, maintenance man at the State Line RV Park. Williams made a report with Deputy Robert Cutburth of the Boone County Sheriff's Office.

> Affiant Robert Braden of the 14th Judicial Drug Task Force spoke to Williams on the phone and received a description of the handgun along with a recap of the incident.

> Williams gave the following statement: On Friday January 23rd, 2015, he had requested maintenance come to his residence to repair his fan. Williams stated maintenance man Anthony Bragg came to his residence but did not have the part to fix the fan. While there Bragg removed a black pouch from his front shirt pocket.

> Bragg opened the pouch and showed Williams a one gallon size zip-loc bag half full of a white crystalline substance he believed to be methamphetamine. Bragg offered some of the substance to Williams at which time Williams refused and told Bragg he needed to leave the residence. Bragg pulled a black semi-auto pistol from his right front pocket and stated "I guess this don't need to be talked about again." Bragg then left the residence.

> Williams stated he felt threatened by the actions of Bragg and immediately brought his family to the Boone County Sheriff's Office to report the incident.

A judge issued the search warrant, and it was executed by Braden and several other officers. Bragg's home, vehicle, and a nearby shed were searched, and several incriminating items were seized. The State charged Bragg with possession of methamphetamine with



intent to deliver, possession of firearms by certain persons, possession of drug paraphernalia, and possession of marijuana. Bragg filed a motion to suppress evidence alleging, among other things, a violation of the United States Supreme Court's holding in *Franks v. Delaware*, 438 U.S. 154 (1978).

II.    *Hearing on Motion to Suppress*

At a hearing on Bragg's motion to suppress, the parties stipulated to the following facts in relevant part:[1]

> On January 23, 2015, Robert Williams, a resident of State Line RV Park in Omaha, came to the Boone County Sheriff's [Office] to file a complaint. . . . Boone County Deputy Robert Cutburth took the complaint and spoke with Mr. Williams. In his conversation with Deputy Cutburth, Mr. Williams referred to the person he was complaining about as "Anthony the maintenance man." Deputy Cutburth knew there was an individual who resided at State Line RV Park, worked there as a maintenance man, and was a black male named Anthony Bragg, because Deputy Cutburth had arrested Anthony Bragg at the RV park in a previous investigation.
>
> Deputy Cutburth relayed the complaint and information provided by Mr. Williams to Captain Tom Smith and Investigator Colin Lillard, both with the Boone County Sheriff's Office. Captain Smith and Colin Lillard were also familiar with the same Anthony Bragg due to recent and repeated contact with Mr. Bragg in another ongoing but unrelated investigation.
>
> Pursuant to the complaint and information provided by Deputy Cutburth, Captain Smith contacted Investigator Robert Braden with the 14th Judicial District Drug Task Force to assist in the investigation. Inv. Braden had also assisted the sheriff's office in the ongoing, unrelated investigation referenced above. Based on the complaint and information provided by Captain Smith, Investigator Braden spoke via telephone with Mr. Williams. In their phone conversation, Mr. Williams referred to the person he was complaining about as "a black man named Anthony."

In denying Bragg's motion, the trial court entered an order finding that "Bragg has

---

[1]A stipulation is the equivalent of undisputed proof in that it leaves nothing for the fact-finder to decide. *McCroskey v. State*, 272 Ark. 356, 614 S.W.2d 660 (1981).



not made the required showing that the affiant of the affidavit for the search warrant, knowingly, intentional[ly] or recklessly made any false statements or omissions. Further, the affidavit provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure would be found on Bragg's property."

### III.    *Standard of Review*

In reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Hampton v. State*, 90 Ark. App. 174, 204 S.W.3d 572 (2005).

### IV.    *Discussion*

Bragg argues that the affiant identified "Anthony Bragg" as the person who categorically did the things alleged in the search-warrant affidavit, yet Robert Williams never named "Anthony Bragg." Bragg contends that inserting the name "Anthony Bragg" in the affidavit was a total disregard for the truth and improper under *Franks v. Delaware*, 438 U.S. 154 (1978). Bragg maintains that if the false information is set aside, there are no facts to support probable cause.

*Franks* provides the proper analysis for determining whether false material, misleading information, or omissions render an affidavit in support of a search warrant fatally defective. A warrant should be invalidated if a defendant shows by a preponderance of the evidence (1) that the affiant made a false statement knowingly and intentionally, or with reckless

SLIP OPINION

disregard for the truth, and (2) that with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause. *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999). Similarly, when an officer omits facts from an affidavit, the evidence will be suppressed if the defendant establishes by a preponderance of the evidence that (1) the officer omitted facts knowingly and intentionally, or with reckless disregard, and (2) the affidavit, if supplemented with the omitted information, is insufficient to establish probable cause. *Id.*

Quoting from *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966), the *Franks* Court said, "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." (Emphasis in original.) The *Franks* Court further said that

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks*, 438 U.S. at 164–65.

To uphold the validity of an affidavit made in support of a search warrant, it is not necessary that the affidavit be completely without inaccuracy as long as the inaccuracies are relatively minor when viewed in the context of the totality of the circumstances, including the affidavit taken as a whole and the weight of the testimony of the participants who procured and executed the search warrant. *Moss v. State*, 2011 Ark. App. 14, 380 S.W.3d 479.

SLIP OPINION

While the affidavit contained a misstatement to the extent that Braden suggested that Williams had provided Bragg's first and last name, Bragg has failed to sustain his burden of showing that Braden added or omitted material knowingly, intentionally, or recklessly, as opposed to making a careless mistake. *Cf. Heritage v. State*, 326 Ark. 839, 936 S.W.2d 499 (1996). In his written statement, Williams identified his maintenance man employed at the State Line RV Park on or about January 23, 2015. According to the stipulations, in speaking with the law-enforcement officers, Williams had initially said that it was "Anthony, the maintenance man," and in a later phone conversation with Braden, Williams added that his maintenance man was a black male. There was no evidence that there was more than one black maintenance man named Anthony working at the RV park around that time. "The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized . . .." Ark. R. Crim. P. 13.1. Here, Braden was not required to insert Bragg's full name in the affidavit in order to describe him with particularity.

Even if Bragg's full name were removed from the affidavit, the remaining information provided a sufficient description that the police, through reasonable effort or inquiry, could have located and identified Bragg as the person to whom Williams had referred. We note that there was little likelihood of a mistake being made in executing the search given that Bragg was known to Braden, as well as several other law-enforcement officers, including one who had previously arrested Bragg at his residence at the RV park. Considering the totality of these circumstances and giving proper deference to the trial

6

court's findings, we cannot say that the trial court clearly erred in denying Bragg's motion to suppress.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Charles D. Hancock*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.